IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JESUS JIMENEZ, JR., | § | |
| | § | |
| V. | § | A-18-CV-678-RP |
| | § | |
| TRAVIS COUNTY SHERIFF'S DEPARTMENT, et. al. | § | |

## ORDER

Before the Court are Plaintiff Jesus Jimenez Jr.'s complaint and additional pleadings (ECF Nos. 1, 8, 32, 48), Defendants' Motion for Summary Judgment (ECF No. 51), Plaintiff's response (ECF No. 56), Defendants' reply (ECF No. 57), Defendant's Motion for Reconsideration (ECF No. 62) and Plaintiff's response (ECF No. 63). Plaintiff is proceeding pro se and in forma pauperis (ECF No. 12). After careful consideration of the parties' motions, the Court grants the Defendants' motion for summary judgement and dismisses their motion for reconsideration.

STATEMENT OF THE CASE

Plaintiff filed this complaint pursuant to 42 U.S.C. § 1983. Plaintiff alleges that on December 21, 2016, he was riding on a Travis County Sheriff's Office (TCSO) transportation bus when it got into an accident, causing Plaintiff to sustain injuries to his back and his wrist. He further alleges that, prior to the accident, he requested to wear a seatbelt but was refused, and that after the accident, he was denied emergency medical care, threatened, and forcibly removed from the bus. Plaintiff is suing the Travis County Sheriff's Department[1], Travis County Sheriff Sally

---

[1] Plaintiff's claims against the Travis County Sheriff's Department are dismissed as it is not an entity capable of

1

Hernandez, Officer Arnold Macias, Officer Kenneth Vohrpal, Officer Bernard Hamilton, Sergeant Mark Hardin and Sergeant Dionisio Dorado. Plaintiff seeks $190,000 in compensatory damages from each defendant and $50,000 in punitive damages from each defendant.

Defendants moved for summary judgement.[2] Defendants argue that Plaintiff's individual-capacity claims[3] against Sheriff Hernandez fail because he failed to allege or proffer any evidence of Sheriff Hernandez's personal knowledge or involvement in the accident. Further, Defendants argue they are entitled to qualified immunity because there is no constitutional right to be seat belted while being transported in custody; that Plaintiff was not denied any medical care; and that a mere threat of physical violence does not state a claim for excessive force under § 1983.

In response, Plaintiff argues that the record supports his allegations that he suffered a severe injury as a result of the 2016 bus accident; that Defendants failed to provide him with emergency medical services, and that the summary judgment record shows that Defendants' statements about the accident are inconsistent and that they have tampered with the evidence. (ECF No. 56). Plaintiff also requests additional discovery in the case, including video from the bus's on-board cameras, and the medical records and contact information of other detainees involved in the accident. (Id. at 3-4). The Court granted in part the Defendants' Motion to Abate Discovery (ECF Nos. 60-61), and the Defendants have moved for reconsideration (ECF No. 62).

---

being sued. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991) (holding that police and sheriff's departments are governmental subdivisions without capacity for independent legal action).
[2] Defendant Sally Hernandez filed a Motion to Dismiss on October 23, 2018; however, the Court dismissed this order, preferring to consider Plaintiff's claims against Sheriff Hernandez under the summary judgment standard. (Dkt. Entry May 2, 2019).
[3] The Court granted Plaintiff's motion to amend his complaint to, inter alia, exclude his official-capacity claims against all defendants. (ECF Nos. 32, 35).

## DISCUSSION AND ANALYSIS

A. <u>Summary Judgment Standard</u>

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); FED. R. CIV. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. The moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party cannot rely on general allegations but must produce "specific facts" showing a genuine issue for trial. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. *See James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990). The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual

dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *See id.* (citing *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

      B.    <u>Deliberate Indifference</u>

Plaintiff relies on the protections of the Eighth and Fourteenth Amendment for his claims. The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). At the time of the bus accident, Plaintiff was a pretrial detainee. "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners." *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (*citing Hare*, 74 F.3d at 634-44). Plaintiff's Fourteenth Amendment rights include the right to medical care. *See Sanchez v. Young County., Tex.*, 866 F.3d 274, 279 (5th Cir. 2017); further, because the standard is essentially the same for both pretrial detainees and postconviction prisoners, cases applying the Eighth Amendment remain relevant to the Court's analysis.

To establish deliberate indifference regarding his medical care, Plaintiff must show "that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001)). A delay in medical care, however, "can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm*." *Id.* (alteration in original) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)). Allegations of unsuccessful medical treatment, mere negligence,

neglect, or medical malpractice do not give rise to a § 1983 action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam).

Pretrial detention due process claims are classified based on whether they concern a "condition of confinement" or an "episodic act of omission." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999). In the instant case, Plaintiff's claim is based on an episodic act or omission, and he is suing defendants in their individual capacities only. *See id.* (court employs different standards based on whether individual or municipal liability is at issue). To succeed on his claims, Plaintiff must show that that (1) Defendants were aware of facts from which they could infer a substantial risk of serious harm exists, and (2) they drew the inference. *See Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (en banc). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (quoting *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)). Rather, the official's conduct "must be 'wanton,' which is defined to mean 'reckless.'" *Id.* (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

C. <u>The Bus Accident</u>

On December 21, 2016, at approximately 1:10pm, Plaintiff was being transported back to the Travis County Correctional Center (TCCC) from the Travis County Courthouse along with approximately thirty-four other detainees. Plaintiff alleges that he asked Defendant Hamilton to help him put on his seat belt because his hands were cuffed but Defendant Hamilton laughed in response. (ECF No. 8.) Defendant Hamilton avers that all TCSO transportation buses, like the one he was driving on December 21, 2016, are not equipped with seatbelts for the inmates. (ECF No. 51-2.)

During the drive back, the bus began experiencing mechanical problems and would not accelerate beyond 15 mph when going uphill. (Id.) Defendant Hamilton eventually pulled the bus over and, when it would not restart, he contacted his supervisors. Defendant Dorado dispatched Defendants Macias and Vorpahl to the scene with a replacement bus. (ECF No. 51-3.) Defendant Hardin also responded to situation. (ECF No. 51-5.)

At approximately 1:35pm, Defendants Macias and Vorpahl arrived on the scene: Defendant Macias drove past the disabled bus while Defendant Vorphal exited to guide Defendant Macias's backing up. (ECF Nos. 51-1, 51-3.) Defendant Hardin provided hand signals from the driver's side, while Defendant Vorphal did the same on the passenger side. When the replacement bus was approximately five feet away, Defendant Vorpahl held his up in a fist to signal Defendant Macias to stop, and Defendant Hardin put both his hands in the air to signal the same. The bus continued to back up at approximately 2 mph, and when it was two feet away, Defendant Vorpahl started to tap on the right back corner to alert Defendant Macias to stop. However, Defendant Macias continued to back up and eventually contacted the disabled bus. Defendant Vorpahl stated that, due to his positioning, his left arm, taser, and rifle were caught between the two buses, which caused the grill to break on the disabled bus. Defendant Vorpahl attested that he sustained only soreness and bruising from the accident. (ECF No. 51-3.) Defendant Hamilton was in the passenger seat when the buses made contact and stated that he felt only a "slight jolt." (ECF No. 51-2.)

After the accident, Defendant Hardin oversaw the transfer of the detainees to the other bus. (ECF No. 51-2.) Defendant Vorpahl reminded Defendant Hardin that they needed to conduct a seating chart, but Defendant Hardin elected not to, based on the amount of time the detainees were in an unsecure area, the closure of traffic lanes, and the contact between buses. (ECF Nos. 51-1, 51-5.) Plaintiff alleges that Defendants Hardin, Hamilton, and Vorpahl threatened him and other

6

detainees with forcible removal, yelling "get off the bus or [you] will be dragged off!", despite his and other detainees complaining of pain. (ECF No. 8.)

The detainees arrived back at TCCC at 1:57pm and were given a choice to have a medical evaluation; of the thirty-five prisoners on the bus, eighteen declined. (ECF No. 51-1.) Plaintiff's bunkmate attested that, while waiting to be seen by medical staff, Plaintiff appeared to be in extreme back and neck pain, and that his wrists were cut from the handcuffs. (ECF No. 56-2.)

Plaintiff was seen by medical staff at 4:26pm. (ECF No. 52.) Plaintiff told staff that he had chronic back issues and that, after the bus accident, he now had sharp pains down his right side when walking. He stated that he already used a brace for weekly support and requested a cane. Medical staff noted that Plaintiff's respirations were unlabored, his gait was steady, and he had no deficits in range of motion. They also noted Plaintiff had naproxen on his person, and suggested he take it as needed for back pain. (Id.) Plaintiff again saw medical staff on January 6, 2017: he reported that while the back brace and naproxen were helping, he still had back pain. He declined changing the naproxen for Motrin, and medical staff gave him exercises for his back. He also reported that he was in a fight three months prior to his arrest, and that his right hand still hurt. Plaintiff denied any recent new injuries and an x-ray of his hand showed no fracture. (ECF No. 56-1.)

Plaintiff's medical records show that he continued to complain of back pain throughout his time in TCSO custody, and that he was regularly seen and treated for this pain by medical staff. (ECF No. 56-1 3-73.) Plaintiff also received psychiatric care while at TCCC. (ECF No. 56-1.)

D. <u>Analysis</u>

1. *Defendants Hamilton, Vorpahl, Macias, Hardin, and Dorado*. Plaintiff alleges that Defendants violated his constitutional rights by transporting him in a bus without seatbelts, driving

7

in a reckless manner, causing the bus accident, and then denying him immediate medical care. The summary judgment record shows that Defendant Hamilton drove the van without incident until it started breaking down, at which point he alerted his supervisors and requested a replacement vehicle. Defendant Dorado sent another bus immediately, and the ensuing bus accident was due to Defendant Macias misinterpreting Defendants Hardin and Vorpahl's inconsistent hand signals. The accident caused approximately 4 inches of paint to transfer between buses, and the cracking of the disabled bus's grill.

Plaintiff has not brought forth any evidence outside of his verified complaint and additional pleadings that rebuts this account of the accident. He has requested video from the bus's cameras, the medical records and contact information from the nineteen detainees who requested medical evaluations after the bus accident; and that Defendants serve witness subpoena forms on thirty-five other detainees. (ECF No. 58.) However, Defendant Hardin reported that the disabled bus's camera system was not functioning (ECF No. 51-1), and Plaintiff is not entitled to the private medical records of other persons.

Construing the facts in the light most favorable to Plaintiff, he has not shown that there is a genuine issue of material fact on whether Defendants were aware of and disregarded a substantial risk to Plaintiff's safety regarding the bus accident. The unrebutted record shows that there were no seatbelts on the TCSO bus; that Defendant Hamilton pulled the bus over when it started to malfunction and requested backup which arrived quickly; that Defendant Macias backed up slowly but became confused by the inconsistent hand signals and eventually collided with the disabled bus; and that Defendant Vorpahl's arm was caught between the two buses, resulting in the disabled bus's grill cracking. The Court therefore concludes that Defendants were not aware of any danger to Plaintiff's health and safety, nor could their actions could be described as "wanton" or

"reckless." As a result, Defendants are granted summary judgment on these claims. *See Baughman v. Hickman*, 935 F.3d 302, 307-09 (5th Cir. 2019) (plaintiff failed to substantiate his allegations that defendant caused his back injury when he drove recklessly and caused plaintiff to be thrown out of his seat while handcuffed and shackled; negligent driving does not support the violation of a constitutional right; driver not shown to be responsible for the van not having seatbelts); *Cooks v. Crain* 327 F. App'x 493, 494 (5th Cir. 2009) (unpublished per curiam) (affirming district court's dismissal of complaint on the grounds that there is no federal right to have seatbelts on a large passenger van; noting that plaintiff seeks safety devices which he has not shown are required by state or federal law); *see also Jabbar v. Fischer*, 683 F.3d 54 (2d Cir. 2012) (holding that failure of prison officials to provide inmates with seatbelts does not, without more, violate the Eighth or Fourteenth Amendments).

Plaintiff also alleges that Defendant Hardin, Vorpahl, and Hamilton used excessive force by threatening to drag him out of the damaged bus. However, verbal harassment, without more, does not amount to a constitutional violation. *See Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("[M]ere threatening language and gestures of a custodial Defendant do not, even if true, amount to constitutional violations"); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973) (the use of words, no matter how violent, does not comprise a § 1983 violation).

Finally, Plaintiff alleges that Defendants violated his constitutional rights by failing to provide immediate medical care. The record shows that the bus accident occurred sometime around 1:35pm; the detainees arrived back at TCCC at 1:57pm; and Plaintiff was seen by medical staff at 4:27pm, where he complained of pain but had normal range of motion, a steady gait, and unlabored breathing. Further, when he returned to see the doctor sixteen days later, he reported

that the back brace and his pain medication were helping, although he was still in pain. A delay in medical care "can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] results in substantial harm." *Easter*, 467 F.3d at 464 (citations omitted). The summary judgment record shows that Plaintiff received prompt, if not immediate, medical care, and that his condition did not warrant emergency care. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.") (citing *Mendoza*, 989 F.2d at 193–95). Accordingly, defendants Hamilton, Vorpahl, Macias, Hardin, and Dorado are entitled to summary judgment.

2. *Defendant Sheriff Hernandez.* Plaintiff has not provided any allegations or evidence suggesting that Sheriff Hernandez was personally involved in either the bus accident or his subsequent medical care. Rather, Plaintiff's allegations against Sheriff Hernandez relate to her failure to install seat belts on the transportation buses in contravention of national safety standards.[4] *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.")

To the extent Plaintiff is asserting Sheriff Hernandez is liable due to her supervisory position, this claim must be dismissed because supervisory officials cannot be held vicariously liable in § 1983 cases solely based on the employer-employee relationship. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 692 (1978); *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). If a supervisor is not personally involved in the alleged constitutional deprivation, she may be held liable only if there is a sufficient causal connection between the supervisor's wrongful conduct

---

[4] The Court notes that, at the time of the bus accident, Greg Hamilton was the Travis County Sheriff as Sally Hernandez did not assume office until January 1, 2017. However, because Sheriff Hernandez has addressed the merits of the complaint in her summary judgment motion, the Court will as well.

and the constitutional violations. *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). In order to demonstrate a causal connection, the supervisor would have to "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* at 304. However, as noted above, there was no constitutional violation of Plaintiff's rights when he was not wearing a seatbelt during his transportation. Accordingly, Sheriff Hernandez is also granted summary judgment.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 51) is **GRANTED**.

It is further **ORDERED** that Plaintiff's claims against the Travis County Sheriff's Department are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e).

Finally, it is **ORDERED** that Defendants' Motion for Reconsideration (ECF No. 62), and all other pending motions, are **DISMISSED**.

**SIGNED** on December 2, 2019.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE